UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------x

DANIEL C. MATTSON,                              :

    Plaintiff,                                  :

       -against-                               :   No. _____

DANIEL G. GUYETTE, individually and in his      :   **COMPLAINT**
official capacity as Dean of the College of
Fine Arts at Western Michigan University;       :
KEITH KOTHMAN, individually; the Director
of the School of Music at Western Michigan      :
University; and the President of Western
Michigan University,                            :

    Defendants.                                 :

---------------------------------------------------------------x

## INTRODUCTION

1. Until recently, Plaintiff Daniel Mattson was an adjunct faculty member at the Western Michigan University School of Music. Mr. Mattson had worked as a musical performer and adjunct faculty member at Western Michigan University since 1999. He is a world-class trombonist who performed with different school-affiliated ensembles. Separately, in 2017, Mr. Mattson wrote an autobiographical account of his return to Catholicism after spending most of his adulthood in a homosexual lifestyle. Daniel C. Mattson, *Why I Don't Call Myself Gay: How I Reclaimed My Sexual Reality and Found Peace* (Ignatius Press 2017). Mr.

1

Mattson holds traditional Catholic views on homosexuality and advocates sympathetic engagement with same-sex-attracted individuals.

2. In the fall of 2021, campus activists discovered Mr. Mattson's writings on Catholicism and same-sex attraction. They claimed that his Catholic views were offensive to homosexual students and protested his continued affiliation with the school. In short order, the school administration removed Mr. Mattson from a student-faculty ensemble, and did not renew his annual contract.

3. Even though Mr. Mattson never expressed his religious views at Western Michigan University, he was maligned and punished solely for holding to and expressing orthodox Catholic teaching elsewhere.

4. This complaint alleges a violation of the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

5. This is an action arising under the Constitution and laws of the United States. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

6. Plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1988.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all events giving rise to the claims detailed in this complaint occurred within the Western District of Michigan and the Defendants work and/or reside in the Western District of Michigan and are subject to the Court's personal jurisdiction.

## IDENTIFICATION OF PARTIES

8. Plaintiff Daniel C. Mattson is a professional orchestral trombonist and was, until his termination during the 2021-22 academic year, an adjunct faculty member at the Western Michigan University School of Music. He has been employed by the Grand Rapids Symphony Orchestra since 1997. Mr. Mattson is now and was at all times relevant to this action a resident of Grand Rapids, Michigan.

9. Western Michigan University ("WMU") is a state university. MCL § 390.551 *et seq*. The individual employees and agents acting on behalf of WMU act under color of state authority.

10. Defendant Daniel G. Guyette is now and was at all times relevant to this action the Dean of the College of Fine Arts at WMU. The actions taken by Defendant Guyette described below were taken in his role as the Dean of the College of Fine Arts. He continues to have responsibility for the exclusion of Plaintiff from his former faculty position because of his speech and religion. Defendant Guyette is sued in both his official and individual capacities.

11. Defendant Keith Kothman is a Professor at the School of Music at WMU, and was formerly the Director of the School of Music, which was and is a part of the College of Fine Arts. The actions taken by Defendant Kothman described below were taken in his role as the Director of the School of Music. He is sued in his individual capacity.

12. Defendant the Director of the School of Music at Western Michigan is the head of the School of Music at WMU, and is responsible for continuing to enforce Plaintiff's exclusion from his former faculty position because of his speech and religion.

13. Defendant the President of Western Michigan University is the chief executive of WMU, and is responsible for both its operations on a day-to-day basis and the continuing exclusion of Plaintiff from his former faculty position because of his speech and religion.

## FACTUAL BACKGROUND

14. Mattson's contract with WMU normally ran each year from September through May. Pursuant to this contract, he played trombone in WMU's Western Brass Quintet ("WBQ"), one of the oldest such musical groups in the country and comprised entirely of WMU faculty members. The WBQ performs at the University, at local high schools, and other events designed to recruit music students. In addition, the WBQ has represented the School of Music at international music festivals, has presented recitals at Carnegie Hall, has recorded several compact discs, and is well known for commissioning and promoting new works for brass quintet. The WBQ holds regular events at which WMU music students sit side-by-side with the faculty players in order to get performing experience.

15. As part of his duties, Mr. Mattson also performed with the Western Winds, a student-faculty ensemble group, part of the WMU student band.

16. In 2009, Mr. Mattson returned to Catholicism and left behind his prior homosexual lifestyle. For the next several years, he wrote articles and spoke at public events explaining how the church should engage with people who experience same-sex attraction. He sincerely holds the traditional Catholic view that no one is morally culpable for merely experiencing desires, but anyone who is Catholic is accountable for responding to them in a way that is consonant with the Catholic faith. He sincerely believes that the church should sympathetically engage people who experience same-sex attraction while inviting them to

4

consider the claims of Catholicism concerning human sexuality. His writings state his opinion that it is incorrect to label someone as being homosexual or heterosexual, but rather those are labels that describe attractions or behaviors. He also argues that, while homosexual behavior is sinful and contrary to natural law, homosexual inclinations are not sinful.

17. The majority of Mr. Mattson's writings on the subject of same-sex attraction and Catholicism appeared in publications with a predominately Catholic or Christian audience, such as *Crisis Magazine*, the *National Catholic Register*, and *First Things*, or on his personal blog, *Letters to Christopher*.

18. In 2014, Mr. Mattson appeared in a documentary film produced by the Courage International Apostolate, *Desire of the Everlasting Hills*, https://everlastinghills.org/movie/.

19. In 2017, Mr. Mattson's writing culminated in *Why I Don't Call Myself Gay* – an autobiographical account of how he navigated his same-sex attraction. As described in the book jacket: "In this frank memoir, Mattson chronicles his journey to and from a gay identity, finding peace in his true identity, as a man, made in the image and likeness of God." The book contains a forward by Cardinal Robert Sarah and a personal introduction by Father Paul Check, the former executive director of Courage International. Specific chapters of the book address, *inter alia*, the New Testament, the writings of Catholic saints, and the *Catechism* of the Catholic Church, as well as the philosophical underpinnings of the gay identity. The book received acclaim among Catholics and evangelicals for its honest portrait of Mr. Mattson's experience and for its insight into how the church can speak more graciously to those who experience same-sex attraction.

20.     All the while, Mr. Mattson strictly segregated his religious advocacy from his work for WMU.   He never initiated a discussion about his religious beliefs or moral views with School of Music students.

21.     Mr. Mattson was scheduled to perform a recital as a Guest Artist on October 2, 2021 and play with a student brass group later that month.   WMU normally invites about ten such Guest Artists throughout the year to perform a recital and other activities designed to expose students to musical performances and give music students a chance to meet and work with professional artists, if the Guest Artist agrees.   Normally, music students who work in the same area as a Guest Artist are required to attend the recital.   If they play the same instrument, their instructors can assign them to participate in hands-on events for which they may be graded.

22.     In late September 2021, a recently-appointed music school faculty member and LGBTQ activist, Lauron Kehrer, discovered Mr. Mattson's writings on his experiences with homosexuality and his efforts to reject the "gay lifestyle" by returning to his Catholic faith when she saw the list of the performers who were scheduled to perform recitals and googled them for inclusion in her syllabus.   Professor Kehrer started a campaign to restrict or cancel his planned events as a Guest Artist.   She engaged students, other faculty members, and administrators in this effort, notably the Dean of the College of Fine Arts (Defendant Guyette) and his Special Assistant for Diversity and Inclusion, Kenlana Ferguson.

23.     Professor Kehrer posted the following message to Twitter:



24.     Professor Kehrer posted other, similar messages to Facebook, and spent an entire class talking about how damaging she believed Mr. Mattson's book and thinking was to the LGBTQ community.

25.     In the days leading up to the October 2 recital, there were extensive discussions about Mr. Mattson on social media and by email among administrators, faculty, and students at WMU.

26.     On the morning of October 1 (the day before the recital), Defendant Kothman, the Director of the School of Music, sent an email to Mr. Mattson asking to speak with him by telephone.   Mr. Mattson replied with his cell number, and they spoke at about 11:00 a.m. Defendant Kothman told Mr. Mattson that, because of his public advocacy for the position that homosexuality is a chosen lifestyle that is to be avoided, he would no longer be permitted to work with students.   Although his concert that Saturday would be allowed to go forward, students would not be required to attend, and Mr. Mattson would no longer be allowed to

7

perform with the Western Winds faculty-student ensemble. Moreover, although Mr. Mattson could continue to perform with the WBQ for the time being, students would no longer be required to attend those events.

27. At 1:28 p.m. on October 1, Mr. Mattson sent an email to Defendant Kothman and to four members of the brass faculty in which Mr. Mattson explained his choice to write about his experience navigating his personal and religious life and to offer some background and explanation for his views, and to express his hope that the University would reconsider its decision.

28. Defendant Kothman never responded to this email.

29. Some two hours later, still on October 1, Defendant Kothman sent a school-wide email, on behalf of himself, Defendant Guyette, and Kenlana Ferguson, Special Assistant to the Dean for Diversity and Inclusion:

> From: Keith Kothman <keith.kothman@wmich.edu>
> Date: October 1, 2021 at 3:19:52 PM EDT
> To: Music Employee Mailing List <mus-employee@wmich.edu>
> Subject: Update Regarding Guest Artist Mattson Events
>
> Dear Students, Faculty, and Staff in the School of Music,
>
> This week and weekend, Daniel Mattson, a trombonist and independent contractor with the School of Music, will be a guest artist in our community. Mr. Mattson is also a high-visibility advocate for the position that homosexuality is a chosen lifestyle that is to be avoided. He has stated his position strongly and widely. While he is free to express his beliefs, we cannot ignore the fact that they are harmful to members of our LGBTQ community, particularly our students.
>
> Students make a choice when enrolling for classes and choosing what musical opportunities to participate in, but traditionally they have little to no choice when it comes to participating with guest artists like Mr. Mattson. Further, there is a power differential between a student and the faculty member or guest artist with whom they choose to participate. Unfortunately, Mr. Mattson's strong public

8

opinion has raised doubts about whether an educational setting that includes him can be fair and unbiased. Today, we are providing students the ability to make that decision for themselves and choose whether to participate in musical activities with him.

Mr. Mattson's recital will take place this Saturday as scheduled. No student is required to attend the recital, nor will they be penalized, academically or otherwise, for not attending.

Mr. Mattson was scheduled to perform with the Western Winds this semester, an ensemble primarily composed of faculty and students. He will no longer participate because doing so would force students to choose between working with him, or passing up the opportunity to work in this ensemble.
Mr. Mattson will continue his participation in the Western Brass Quintet, a faculty ensemble in the School. Students will not be required to attend WBQ recitals and events, nor will they be academically penalized for not doing so.

We are listening to you, our students, faculty, and staff in the School of Music, and giving your voices careful consideration. We will examine our process for selecting, vetting, and hiring guest artists and independent contractors that engage with our community to provide a high-quality music education.

We look forward to hearing more from you. Keith Kothman, Director of the School of Music will represent us by attending Saturday's recital and will be in the Dalton Lobby before and after the performance in the event any member of the community wants to share their perspective.

Sincerely,
Dan Guyette, Dean, CFA
Keith Kothman, Director, School of Music
Kenlana Ferguson, Special Assistant to the Dean for Diversity and Inclusion

Western Michigan University
Keith Kothman
Director, School of Music
*he/him/his*
1903 W. Michigan Ave.
(269) 387-4671
2146 Dalton Center

wmich.edu/music
keithkothman.com

30. As the email stated, although the recital was allowed to go forward, student attendance was voluntary, and was in fact discouraged. Whereas normally about 20 students attend such recitals, only one attended Mr. Mattson's event.

31. Though Defendant Kothman's email asserts that "Mr. Mattson's strong public opinion has raised doubts about whether an educational setting that includes him can be fair and unbiased," Mr. Mattson's past, including his work with the Catholic Church, had never been a part of his work at WMU.

32. Mr. Mattson had kept his views on Catholicism and homosexuality separate from his work. Though the other members of the WBQ knew about his story, they recognized that he did not want to talk about it with them. They respected his wishes, and understood that he did not view WMU as a place where he considered it appropriate to proselytize.

33. Though Defendant Kothman suggests that Mr. Mattson is an "advocate" and that he "states his position strongly and widely," neither is entirely accurate. At his moment of peak public interest, Mr. Mattson gave multiple interviews to a number of conservative, mostly Catholic publications and radio shows – outlets that are generally not well known outside their devoted readers and listeners. His public speaking and writing had largely ended by 2021.

34. On October 2, 2021, in response to an email from a faculty member at the School of Music, Defendant Guyette wrote: "Dan has the right to say whatever he wants. I have the right not to have the SOM and CFA be perceived as supporting those beliefs by hiring him." Defendant Kothman was copied on this email, and replied to express his agreement.

35. Plaintiff's outside speech did not cause any material disruption to the activities of WMU or the School of Music. Defendants Guyette and Kothman imposed adverse

10

consequences on Plaintiff because of their disagreement with the content of his speech and not because of any effect his speech had on the school.

36. On October 3, 2021, in response to an email from another faculty member, Defendant Kothman wrote:

> The decision is not about his personal religious beliefs. As we stated, it's about how extensively and publicly he has made those beliefs part of his complete presence, the pain that causes students (and faculty and staff), and the extreme power differential that requires students to attend his events and/or perform with him or suffer academic/professional consequences. Whatever Mattson's personal struggle involved, he actively chose to make it an extensive public presence. He actively chose to counsel others that they could follow his path. Yes, he has not done that at WMU, ever. But members of the LGTBQ community have expressed the huge amount of pain that he causes them. We have an obligation to take their pain into account, especially when they do not have the same power we have.
>
> * * *
>
> I met with faculty, students, and staff that expressed both concerns and support. Dan [Guyette] and I spoke about this at the beginning of the semester. We brought in higher levels of administration. We talked with our Special Assistant to the Dean for Diversity. And the dean and special assistant met with music members of the CFA Student Diversity Advisory Committee. This committee has repeatedly talked about the need to consider more than representation of guests, but that we must work to address problematic guests and the pain they cause students.

Defendant Guyette was copied on this email, and replied to express his agreement.

37. On October 8, 2021, the School of Music held two town halls meetings, one with students and one with faculty, regarding "Dan Mattson Followup." Mr. Mattson was not invited and did not attend.

38. Up to this point in time Mr. Mattson had not been presented with his annual contract for his work at WMU for the 2021-22 academic year.

39.     On October 21, 2021, Defendant Kothman emailed Mr. Mattson a proposed Independent Contractor Agreement.   A true and correct copy of this email and the proposed Independent Contractor Agreement (with redactions) is attached hereto as Exhibit A and is incorporated herein by reference.   Per the Scope of Work Addendum, Mattson was to be a "Guest Artist for: MUS 2180 and MUS 5140," and was to be paid "$13,200 for work with the Western Brass Quintet through 10/21/21, and for other activities which may be requested by the Director of the School of Music and/or the Dean of the College of Fine Arts."   The stated term of the agreement was 10/20/2021 to 10/31/2021.   The language in the Scope of Work Addendum was new, representing a change from previous years.

40.     On October 22, 2021, Mr. Mattson asked Defendant Kothman by email about the new language.   On October 27, Defendant Kothman replied with the following statement:

> You are being paid for your work with the WBQ up to now.   As of today, your services with the WBQ are no longer needed moving forward.   We have agreed to pay you what you expected to receive for the entire year, based on recent non-COVID years of service with the WBQ.   The contract language would allow for performances with the WBQ throughout the academic year should they, or the school/college, request.   But as of today, we are not requesting those services.

41.     On October 28, Mr. Mattson emailed Defendant Kothman a series of follow up questions.   On November 1, Defendant Kothman replied as follows, with his answers inserted after the text of Mr. Mattson's questions (the answers are shown below in bold):

> I'm a bit confused about the term of the contract. According to the "Scope of Work Addendum," my payment is for my work with the Western Brass Quintet through 10/21/21 and "for other activities which may be requested by [the Director or the Dean]."
>
> In your email below, you clarified that these other activities could have occurred throughout the academic year, but that "as of today" you "are not requesting those services."

12

Do you mean that you or the Dean, could ask for other services at a later date during the academic year even though as of today you haven't asked for such services?   **Yes, although we understand the focus of your work related to the IC is the Western Brass Quintet.**

Or do you mean to say that there will be no further requests for my services during the current academic year, period?

**As I answered in the previous email, the contract allows for the possibility of work (with the WBQ) later this year, but at this time, we don't anticipate a request for further work.**

And, I'm a little confused about what you mean when you say below that my services with the WBQ "are no longer needed moving forward."   Just so I can plan for the future, do you mean only that they aren't needed for the remainder of this academic year?   Will I be receiving a similar contract next academic year?

**Independent contractor agreements have no expectation of yearly renewal. At this time, we do not plan on offering you an independent contractor agreement for academic year 2022-2023.**

42.     Mr. Mattson heard nothing further from WMU.

43.     Mr. Mattson signed the proposed contract on February 8, 2022, and returned the signature pages to Defendant Kothman by email on February 11, 2022.   He never received a copy signed by WMU, although he was eventually paid the $13,200, in late March 2022.

44.     Defendant Kothman has since resigned as the Director of the School of Music..

45.     True to their word, WMU did not offer Mr. Mattson a contract for the 2022-2023 academic year.

**FIRST CLAIM FOR RELIEF**
Against Defendant Daniel Guyette, in Both his Official and Individual Capacities,
Against Defendant Keith Kothman, in his Individual Capacity,
Against Defendant the Director of the School of Music at Western Michigan University,
and Against Defendant the President of Western Michigan University
**Violation of the First and Fourteenth Amendments: Freedom of Speech**
**42 U.S.C. § 1983**

46.     Plaintiff hereby incorporates all of the previous allegations of this complaint.

47. Plaintiff brings this cause of action against Defendant Guyette in both his individual and official capacity.

48. Plaintiff brings this cause of action against Defendant Kothman in his individual capacity.

49. Plaintiff brings this cause of action against Defendant the Director of the School of Music at Western Michigan University.

50. Plaintiff brings this cause of action against Defendant the President of Western Michigan University.

51. Plaintiff's writing and speaking on the subject of same-sex attraction, Catholicism, and Christianity was on a topic of public concern.   His writing and speaking on this subject was not made on behalf of WMU or its School of Music.

52. Defendants acted under color of state authority in attempting to prevent Plaintiff from having contact with WMU students, in removing him from the Western Winds ensemble, in declining to renew his annual contract as an adjunct faculty member and as a member of the Western Brass Quintet, and in failing to rectify these wrongs after they had been committed.

53. Defendants imposed adverse consequences against Plaintiff because of the views expressed in his writings and in his speech.   They had and have no adequate justification for imposing adverse consequences on Plaintiff for his protected speech.

54. Defendants targeted Plaintiff for adverse treatment because of his speech on issues of public concern in spite of the existence of clear written policies at WMU recognizing the applicability of the First Amendment and guaranteeing freedom of speech.  *See, e.g.*, "Free Speech," https://wmich.edu/freespeech.   The President of WMU, moreover, has recently given

speeches in which he emphasizes the importance of the free and respectful exchange of ideas. *See, e.g.,* Speech by Edward Montgomery, *We Talk*, September 21, 2021, https://youtu.be/e-JdUO0mIGI.

55. Defendants violated the First Amendment (as incorporated against the states through the Fourteenth Amendment) by imposing adverse consequences on Plaintiff for his protected speech. Accordingly, they also violated 42 U.S.C. § 1983 in doing so, and Plaintiff is entitled to recover under that statute.

56. Plaintiff has suffered damages and will continue to suffer damages as a consequence of the adverse actions taken by Defendants. Accordingly, he is entitled to both damages for past harm and injunctive and/or declaratory relief to prevent ongoing and future harm.

**SECOND CLAIM FOR RELIEF**
**Against Defendant Daniel Guyette, in Both his Official and Individual Capacities,**
**Against Defendant Keith Kothman, in his Individual Capacity,**
**Against Defendant the Director of the School of Music at Western Michigan University,**
**and Against Defendant the President of Western Michigan University**
**Violation of the First and Fourteenth Amendments: Free Exercise of Religion**
**42 U.S.C. § 1983**

57. Plaintiff hereby incorporates all of the previous allegations of this complaint.

58. Plaintiff brings this cause of action against Defendant Guyette in both his individual and official capacity.

59. Plaintiff brings this cause of action against Defendant Kothman in his individual capacity.

60. Plaintiff brings this cause of action against Defendant the Director of the School of Music at Western Michigan University.

15

61. Plaintiff brings this cause of action against Defendant the President of Western Michigan University.

62. Defendants acted under color of state authority in preventing Plaintiff from having contact with WMU students, in removing him from the Western Winds ensemble, in declining to renew his annual contract as an adjunct faculty member and as a member of the Western Brass Quintet, and in failing to rectify these wrongs after they had been committed.

63. Defendants imposed adverse consequences against Plaintiff because of his religion and sincerely held religious beliefs.  They had and have no adequate justification for imposing adverse consequences on Plaintiff for his religion and religious beliefs.

64. Defendants targeted Plaintiff for adverse treatment because of his religion and religious beliefs in spite of the existence of clear written policies at WMU prohibiting religious discrimination.  *See, e.g.*, "WMU Notice of Non-Discrimination," https://wmich.edu/equity/nondiscriminationnotice, "Non-Discrimination Policy," http://wmich.edu/policies/non-discrimination.

65. Defendants' actions reflect animus towards Plaintiff's religion and religious beliefs.

66. Defendants did not impose the adverse consequences it imposed on Plaintiff on other similarly-situated individuals who were members of religions other than Catholicism.

67. Defendants violated the First Amendment (as incorporated against the states through the Fourteenth Amendment) by imposing adverse consequences on Plaintiff for his religion and religious beliefs.  Accordingly, they also violated 42 U.S.C. § 1983 in doing so, and Plaintiff is entitled to recover under that statute.

16

68.	Plaintiff has suffered damages and will continue to suffer damages as a consequence of the adverse actions taken by Defendants.   Accordingly, he is entitled to both damages for past harm and injunctive and/or declaratory relief to prevent ongoing and future harm.

**THIRD CLAIM FOR RELIEF**
Against Defendant Daniel Guyette, in Both his Official and Individual Capacities,
Against Defendant Keith Kothman, in his Individual Capacity,
Against Defendant the Director of the School of Music at Western Michigan University,
and Against Defendant the President of Western Michigan University
<u>Violation of the Fourteenth Amendment: Equal Protection of the Law</u>
<u>42 U.S.C. § 1983</u>

69.	Plaintiff hereby incorporates all of the previous allegations of this complaint.

70.	Plaintiff brings this cause of action against Defendant Guyette in both his individual and official capacity.

71.	Plaintiff brings this cause of action against Defendant Kothman in his individual capacity.

72.	Plaintiff brings this cause of action against Defendant the Director of the School of Music at Western Michigan University.

73.	Plaintiff brings this cause of action against Defendant the President of Western Michigan University.

74.	Defendants acted under color of state authority in preventing Plaintiff from having contact with WMU students, in removing him from the Western Winds ensemble, in declining to renew his annual contract as an adjunct faculty member and as a member of the Western Brass Quintet, and in failing to rectify these wrongs after they had been committed.

17

75. Defendants imposed adverse consequences against Plaintiff because of his religion and sincerely held religious beliefs. They had and have no adequate justification for imposing adverse consequences on Plaintiff for his religion and religious beliefs.

76. Defendants targeted Plaintiff for adverse treatment because of his religion and religious beliefs in spite of the existence of clear written policies at WMU prohibiting religious discrimination. *See, e.g.*, "WMU Notice of Non-Discrimination," https://wmich.edu/equity/nondiscriminationnotice, "Non-Discrimination Policy," http://wmich.edu/policies/non-discrimination.

77. Defendants' actions reflect animus towards Plaintiff's religion and religious beliefs.

78. Defendants violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against Plaintiff because of his religion. Accordingly, they also violated 42 U.S.C. § 1983 in doing so, and Plaintiff is entitled to recover under that statute.

79. Plaintiff has suffered damages and will continue to suffer damages as a consequence of the adverse actions taken by Defendants. Accordingly, he is entitled to both damages for past harm and injunctive and/or declaratory relief to prevent ongoing and future harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. A declaratory judgment that Defendants violated the United States Constitution and 42 U.S.C. § 1983 by their decision not to renew Plaintiff's contract for his position as an

18

adjunct faculty member based on his constitutionally-protected speech and on the free exercise of his religion;

  B. Injunctive relief requiring Plaintiff's reinstatement to his former position as an adjunct faculty member, with all of its former prerogatives and advantages, and without any unwarranted restriction on Plaintiff's freedom of speech or on the free exercise of his religion;

  C. Actual and compensatory damages against Defendants Guyette and Kothman in an amount to be determined at trial;

  D. Punitive damages against Defendants Guyette and Kothman for their malicious, oppressive, or reckless conduct, in an amount to be determined at trial;

  E. Attorney's fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, or any other applicable authority; and

  F. Any other relief that is appropriate.

Dated:   March 20, 2023

        */s/ David E. Bevins*
        David E. Bevins
        Michigan Bar (P48955)
        debevins@rhoadesmckee.com
        RHOADES MCKEE PC
        55 Campau Avenue NW, Suite 300
        Grand Rapids, Michigan 49503
        (616) 235-3500

Michael E. Rosman *
rosman@cir-usa.org
J. Robert Renner *
renner@cir-usa.org
Michelle A. Scott *
scott@cir-usa.org
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

Counsel for Plaintiff

*Application for W.D. Mich. Admission forthcoming